IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

RESONDA KAY VICKERY f/k/a RESONDA §
KAY GONZALES,                      §
                                   §
        Plaintiff,                 §
                                   §
V.                                 §        CIVIL ACTION NO. G-11-0243
                                   §
WELLS FARGO BANK, N.A.,            §
                                   §
        Defendant.                 §

## MEMORANDUM AND ORDER

Pending is Defendant's Motion for Summary Judgment and Motion to Dismiss Pursuant to

Rule 12(b)(6) and 9(b) (Document No. 22), in which Defendant seeks either summary judgment on,

or dismissal of, all of Plaintiff's claims.  Having considered the motion, Plaintiff's response

(Document No. 28), the summary judgment evidence, and the applicable law, the Court ORDERS,[1]

for the reasons set forth below, that Defendant's Motion for Summary Judgment and Motion to

Dismiss is GRANTED.


## I.      Background and Procedural History

Plaintiff Resonda Kay Vickery ("Vickery") filed this suit in the 122nd District Court of

Galveston County, Texas, seeking damages for an alleged wrongful foreclosure by Defendant Wells

Fargo Bank, N.A. ("Wells Fargo") on her residence at 4114 Grand Blvd., Dickinson, Texas 77539.

Wells Fargo timely removed the case to this court on the basis of diversity jurisdiction.  Thereafter,

Vickery filed a First Amended Complaint (Document No. 17), setting forth nine claims against Wells

---

[1] On July 19, 2011, pursuant to the parties' consent, this case was transferred by the District
Judge to the undersigned Magistrate Judge for all further proceedings.  *See* Document No. 11.

Fargo: (1) declaratory judgment; (2) wrongful foreclosure; (3) slander of title; (4) fraud; (5) violations of § 12.002 of the Texas Civil Practice and Remedies Code; (6) violations of the Texas Debt Collection Practices Act, TEX. FIN. CODE § 392.001; (7) unreasonable debt collection; (8) negligent misrepresentation; and (9) intentional misrepresentation.

Wells Fargo has moved for summary judgment and/or dismissal of all nine claims, arguing that there is no evidence to support the essential elements of any of the claims and that most of the claims have not been properly pled under FED. R. CIV. P. 12(b)(6) and 9(b).   (Document No. 22). Vickery has filed a response to the motion.  (Document No. 28).

II.     **Standard of Review**

A.     **Summary Judgment**

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  The moving party must initially "demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden,[2] the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists that summary judgment should not be granted."  *Id.*; *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).  A party opposing a properly supported motion for summary judgment may

---

[2] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice.  *Celotex*, 106 S. Ct. at 2548.  Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case."  *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986).  "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper.  *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351).  On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper."  *Id.*  Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial."  *Anderson*, 106 S. Ct. at 2513.

### B.    Stating a Claim

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  "To survive a motion to dismiss, a complaint must contain sufficient  factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is said to be plausible if the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S.Ct. at 1949.  Plausibility will not be found where the claim alleged in the complaint is based solely on legal conclusions, or a "formulaic recitation of the

elements of a cause of action." *Twombly*, 550 U.S. at 555. Nor will plausibility be found where the complaint "pleads facts that are merely consistent with a defendant's liability" or where the complaint is made up of "'naked assertions devoid of further factual enhancement.'" *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557)). Plausibility, not sheer possibility or even conceivability, is required to survive a Rule 12(b)(6) motion to dismiss. *Twombly*, 550 U.S. at 556-557; *Iqbal*, 129 S.Ct. at 1950-1951.

In considering a Rule 12(b)(6) motion to dismiss, all well pleaded facts are to be taken as true, and viewed in the light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). But, as it is only *facts* that must be taken as true, the court may "begin by identifying the pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, at 1950. It is only then that the court can view the well pleaded *facts*, "assume their veracity and [ ] determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, at 1950.

### C.    Pleading Fraud Claims

FED. R. CIV. P. 9(b) imposes a heightened level of pleading for fraud claims and requires a party alleging a common law fraud claim to plead the surrounding circumstances with particularity. FED. R. CIV. P. 9(b); *see Tuchman v. DSC Comm'n Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994), *cert. denied*, 522 U.S. 966 (1997). In the Fifth Circuit, this requires the plaintiff to include allegations of "the particulars of time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what that person obtained thereby." *Tuchman*, 14 F.3d at 1068; *see also Am. Realty Trust, Inc. v. Hamilton Lane Advisors*, 115 Fed. Appx. 662 (5th Cir. 2004) (noting that Rule 9(b) requirements have not been articulated in great detail because what constitutes

4

particularity differs with the facts of each case).  The plaintiff must "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'"  *Sullivan v. Leor Energy, LLC,* 600 F.3d 542, 551 (5th Cir. 2010) (quoting *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).  Further, although particularity is relaxed for scienter, pleading scienter requires more than simple allegations and a plaintiff must provide specific facts to support an inference of fraud.  *Am. Realty*, 115 Fed. Appx. at 667; *Tuchman*, 14 F.3d at 1068.  A dismissal for failure to comply with Rule 9(b) is a dismissal on the pleadings for failure to state a claim.  *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999).


III.    **Discussion**

Vickery's live pleading is the First Amended Complaint (Document No. 17) she filed in this case on December 1, 2011.  In that First Amended Complaint, Vickery sets forth nine claims: (1) declaratory judgment; (2) wrongful foreclosure; (3) slander of title; (4) fraud; (5) violation of section 12.002 of the Texas Civil Practice and Remedies Code; (6) violation of the Texas Debt Collection Act, Tex. Fin. Code § 392.001; (7) unreasonable debt collection; (8) negligent misrepresentation; and (9) intentional misrepresentation.  Vickery seeks damages and declaratory relief.  The general allegations in the First Amended Complaint in support of Vickery's claims are as follows:

> 7.    In the present case, Plaintiff purchased her home on July 20, 2006.  The financing of her home was secured by Mortgages First Real Estate Services.  The loan was then sold and purportedly transferred to HSBC Financial, and was serviced by Wells Fargo .d/b/a ASC.  Plaintiff made her payments as

agreed under the terms of her mortgage up until Plaintiff's income suffered a drastic reduction as a result of the economic downturn.

8.   Plaintiff contacted Wells Fargo to see if she could obtain financial assistance. As she was advised to do, Plaintiff submitted an application for assistance to ASC on July 13, 2009.  On August 20, 2009, Plaintiff received an offer of assistance/Request for additional information.

9.   On September 2, 2011, Plaintiff faxes the requested information to Defendant.

10.   On September 8, 2009, Plaintiff called Defendant to see if a decision had been made regarding her request.  At that time, she was told that the information she previously sent had not been received.  Plaintiff resent her information that day.

11.   On September 11, 2009 after calling Defendant and again being told that the documents still had not been received, Plaintiff faxed them again, along with more current paystubs to ASC employee Carlos Ramirez.

12.   Plaintiff called Defendant a few weeks later and was advised that her request had been denied and that ASC was in the process of organizing a short sale from her "short sale phone team."

13.   Plaintiff conducted some research and contacted Genie Jennings, a realtor with Cherished Properties and inquired as what she needed to do to arrange a short sale of her home.

14.   On September 23, 2009, Plaintiff met with Ms. Jennings to show her the house and complete a listing agreement and provide supportive documentation.

15.   The listing of Plaintiff's home began on September 25, 2009 and the listing agreement was to end on March 31, 2010.

16.   In mid October of 2009, Plaintiff moved out of her house and into an apartment.

17.   On December 7, 2009, Plaintiff received a "Realtor short sale guide" from ASC, which she forwarded to Ms. Jennings.

18.   Part of the short sale guide requested a hardship letter so Plaintiff faxed ASC a hardship letter on December 11, 2009.

6

19.    On January 8, 2010, Ms. Jennings informed Plaintiff that she had called ASC to give an update on how the short sale process was going and to inquire as to whether any additional information was needed.   At that time, Ms. Jennings was told that no foreclosure sale date was scheduled.

20.    On February 5, 2010, Ms. Jennings notified Plaintiff that she had been contacted by a realtor working for ASC inquiring whether Plaintiff wanted the personal property that remained in her garage and, if so, Plaintiff had three days to remove it since the house had been sold in foreclosure and the locks had been changed.   Both Plaintiff and Ms. Jennings were shocked by the news.

21.    On February 11, 2010, Plaintiff faxed a letter to ASC's foreclosure Department, requesting proof of notification of ASC's intent to foreclose.   To date, Plaintiff has received no response.

22.    On February 15, 2010, Plaintiff called the foreclosure department again and spoke with Desiree.   Plaintiff again requested any proof of notification to her of ASC's intent to foreclose.

23.    Plaintiff told Desiree that she was in the process of doing a short sale and that ASC had told her, in the event that she wasn't able to sell the property, she could do a Deed in Lieu of Foreclosure.   Desiree then told Plaintiff that a previous letter had been sent advising Plaintiff of her default and that was all they needed to do.

24.    Plaintiff contacted the County Clerk's office and was informed that there was no record of documents referencing a foreclosure sale or a posting at the county courthouse.

25.    Plaintiff also contacted Susan Edmondson, an attorney.   In an effort to avoid litigation, Plaintiff authorized Ms. Edmondson to send a letter offering to waive her right to sue in exchange for ASC not reporting the unlawful foreclosure on her credit.   The letter was sent via certified mail on February 19, 2011.   To date, Plaintiff has not received a response.

First Amended Complaint (Document No. 17) at 2-5.   It is within the context of these allegations, and the additional allegations that follow each claim, that the Court is to consider: (1) whether Vickery has stated a claim within the meaning of *Twombly*/*Iqbal*, and (2) whether the summary judgment evidence raises a genuine issue of material fact for trial.   While Vickery's first claim is

for declaratory judgment, because a declaratory judgment claim cannot stand alone, *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.* 99 F.3d 746, 752 n. 3 (5th Cir. 1996), it will be considered last.  In addition, because Vickery's fraud and intentional misrepresentation claims are essentially the same and require the same general proof under Texas law, they will be considered together.

### A.    Wrongful Foreclosure Claim

In support of her wrongful foreclosure claim, Vickery contends that Wells Fargo "failed to provide [her] notice of its intent to foreclose and relied on documents that created an invalid lien and/or invalid foreclosure."   First Amended Complaint (Document No. 17) at 7.   Vickery's allegation that the lien was invalid appears to be based on allegations that "Plaintiff does not owe a debt to Defendant Wells Fargo and neither Wells Fargo nor HSBC have standing as the holder of the Note secured by Plaintiff's property."  *Id.* at 5.

 "The purpose of a wrongful foreclosure action is to protect mortgagors against those sales where, through mistake, fraud, or unfairness, the sale results in an inequitably low price."  *In re Keener*, 268 B.R. 912, 921 (Bankr. N.D. Tex. 2001).  In Texas, to prevail on a claim of wrongful foreclosure a plaintiff must prove: "(1) a defect in the foreclosure sale proceedings; (2) a grossly inadequate selling price; and (3) a causal connection between the defect and the grossly inadequate selling price."  *Sauceda v. GMAC Mortgage Corp.*, 268 S.W.3d 135, 139 (Tex. App.–Corpus Christi 2008); *see also Sotelo v. Interstate Financial Corp.*, 224 S.W.3d 517, 523 (Tex. App.–El Paso 2007) ("The elements of wrongful foreclosure are (1) an irregularity at the sale; and (2) the irregularity contributed to an inadequate price."); *Pollett v. Aurora Loan Services*, 2011 WL 6412051 at *1 (5th Cir. 2011) (the elements of wrongful foreclosure are that the Plaintiff's "home sold for a grossly

inadequate selling price and [ ] a causal connection between a defect in the foreclosure sale proceedings and the grossly inadequate selling price.").

Here, Vickery has not alleged a wrongful foreclosure claim that meets the pleading requirements of *Twombly*/*Iqbal*.  In particular, while Vickery does allege that the foreclosure proceeding was defective because she was not given proper notice and because there is no evidence that Wells Fargo had standing to foreclose, Vickery has not alleged that the sales price at the foreclosure sale was grossly inadequate, and there are no allegations of a causal connection between a grossly inadequate sales price and the alleged defects in the foreclosure proceedings.  Under *Twombly* and *Iqbal*, Vickery has not stated a plausible claim for wrongful foreclosure.

Moreover, a review of the summary judgment evidence reveals no genuine issue of material fact on the essential elements of Vickery's wrongful foreclosure claim.  First, although Vickery claims that she did not receive notice of the foreclosure sale, Wells Fargo has provided summary judgment evidence that it sent Vickery a Notice of Default and Intent to Accelerate on December 2, 2009, and a Notice of Acceleration and Substitute Trustee Sale on January 6, 2010.  Both notices were sent to Vickery at the residence made the basis of this suit – 414 Grand Blvd. Dickinson, Texas 77539.  The summary judgment evidence also shows, however, that the letter of January 6, 2010, was returned, undelivered to Wells Fargo.  Exhibit "I" to Defendant's Motion (Document No. 22-10).  Vickery argues that the undelivered letter, coupled with the summary judgment evidence that shows Wells Fargo: (1) knew she was no longer living at the residence, and (2) had an alternate, correct  address for her in its records but failed to send the notice to that address, creates a genuine issue of material fact on whether she was given the proper notice prior to foreclosure.

9

Under the terms of the Note, notices are to be sent to the borrower (Vickery) "by delivering it or mailing it by first class mail to me [the borrower] at the Property Address above or at a different address if I give the Note Holder a notice of my different address." Note, Exhibit "A" to Defendant's Motion (Document No. 22-2) at 2. Similarly, under the terms of the Deed of Trust,

> All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Agreement shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. . . . The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. . . .

Deed of Trust, Exhibit B to Defendant's Motion (Document No. 22-3) at 8. That notice requirement in the Note and Deed of Trust generally comports with Texas law, which provides that notice is adequate when it is sent to the debtor's last known address by certified mail. Tex. Prop. Code § 51.002(e) ("Service of a notice under this section by certified mail is complete when the notice is deposited in the United States mail, postage prepaid and addressed to the debtor at the debtor's last known address. The affidavit of a person knowledgeable of the facts to the effect that service was completed is prima facie evidence of service.").

Here, Wells Fargo has submitted summary judgment evidence that it sent Vickery, at the Property Address (4114 Grand Blvd. Dickinson, Texas 77539), both a Notice of Default and Intent to Accelerate on December 2, 2009, and a Notice of Acceleration and Notice of Trustee's Sale on January 6, 2010. Exhibits "G" and "H" to Defendant's Motion (Document No. 22-8 and 22-9). According to Michael Dolan, Litigation Support Manager of Wells Fargo Bank, N.A., that was

10

Vickery's last known address.[3]  While an alternate address for Vickery is listed in Wells Fargo's own records, there is no evidence that Vickery provided Wells Fargo with written notice of a change in her address.  As such, the uncontroverted summary judgment evidence is that the Property Address was Vickery's last known address for purposes of receiving the notices provided for by the Note and the Deed of Trust prior to foreclosure.  Thus, whether Vickery received the notices or not, they were effective under both the terms of the Note and Texas law.  See *Lambert v. First Nat'l Bank of Bowie*, 993 S.W.2d 833, 835 (Tex. App. – Ft. Worth 1999) ("The general purpose of the statute [§ 51.002(e) of the Texas Property Code] is to provide protection for the debtor, and it provides for only constructive notice of the foreclosure.  . . . There is no requirement that the debtor receive actual notice."); *see also e.g., In re Gongora*, 2012 WL 5373466 *1  (S.D. Tex. 2012); *Cavil v. Trendmaker Homes, Inc.*, 2012 WL 170751 at *5 (S.D. Tex. 2012); *see also Bittinger v. Wells Fargo Bank, N.A.*, 2011 WL 5415664 at *9 (S.D. Tex. 2011).

As for Vickery's allegation that the foreclosure proceeding was defective because Wells Fargo did not have standing to foreclosure, the uncontroverted summary judgment evidence demonstrates to the contrary.  In his Declaration submitted in support of Defendant's Motion. Michael Dolan states that: "The Note and Deed of Trust were subsequently assigned to HSBC Bank USA, National Association as trustee for the holders of certificates issued by Deutsche Alt-B Securities Loan Trust, Series 2006-AB4 ('HSBC').  HSBC is the owner and holder of the Note, and is entitled to enforce the terms of the Note and Deed of Trust.  Wells Fargo services the loan on

---

[3] Mr. Dolan stated in his Declaration in Support of Wells Fargo's Motion for Summary Judgment (Document No. 27) that "Wells Fargo did not receive any notice, written, oral, or otherwise, from Resonda Gonzales before February 2, 2010, that her mailing/notice address had changed."

11

behalf of HSBC."  (Document No. 27) at ¶ 9.  Vickery has not submitted any summary judgment evidence to controvert the contents of Mr. Dolan's Declaration.  Thus, the summary judgment evidence does not raise a genuine issue of material fact on the first, essential element of Vickery's wrongful foreclosure claim – that there was a defect in the foreclosure proceeding.  In addition, there is no summary judgment on the other two elements of a wrongful foreclosure claim.  Wells Fargo is therefore also entitled to summary judgment on Vickery's wrongful foreclosure claim.

      **B.**     **Slander of Title**

     In support of her slander of title claim, Vickery alleges that "Defendant has caused to be recorded various documents including a Notice of Trustee Sale and Substitute Trustee Deed, which evidence an unlawful foreclosure that impaired Plaintiff's title . . . . Such actions constitute slander of Plaintiff's title."  Plaintiff's First Amended Complaint (Document No. 17) at 8.

     In Texas, "'[s]lander of title is defined as a false and malicious statement made in disparagement of a person's title to property which causes special damages. " *Elijah Ragira/VIP Lodging Group, Inc. v. VIP Lodging Group, Inc.*, 301 S.W.3d 747, 758 (Tex. App.–El Paso 2009, review denied).  The elements of a slander of title claim include "the uttering and publishing of disparaging words that were false and malicious, that special damages were sustained, and that the injured party possessed an interest in the property disparaged.  Further, the complaining party must demonstrate the loss of a specific sale." *Id.* at 759.

     Here, as argued by Wells Fargo, Vickery's allegations do not state a plausible claim for slander of title.  All Vickery alleges is that the title to her property was impaired by Wells Fargo's wrongful foreclosure.  Such allegations, particularly in light of the failure of Vickery's wrongful

foreclosure claim, do not state a claim for slander of title under Texas law.  Accordingly, Vickery's

slander of title claim is subject to dismissal under Rule 12(b)(6).

### C.      Fraud/Intentional Misrepresentation Claim

In support of her fraud claim, Vickery alleges as follows:

> Wells Fargo signed, or caused to be signed, assignments and other documents related
> to the foreclosure of Plaintiff's home which contained representations that were
> material to the foreclosure action, and which were made with knowledge of their
> falsity or with disregard for whether they were true.  Such representations were made
> with the intent to mislead the Court and Plaintiff, and with the knowledge that the
> Court and the Plaintiff would justifiably rely on false representations.

Plaintiff's First Amended Complaint (Document No. 17) at 8-9.  Similarly, in support of her

intentional misrepresentation claim, Vickery alleges: that Wells Fargo "made misrepresentations

regarding Plaintiff's loan . . . which representations were made in Wells Fargo's course of business

and in a transaction in which it had a pecuniary interest," that Wells Fargo "supplied false

information to Plaintiff," and "didn't exercise reasonable care or competence in obtaining or

communicating the information regarding the status of Plaintiff's loan, including her eligibility for

a loan modification."  Plaintiff's First Amended Complaint (Document No. 17) at 13-14.

Plaintiff's fraud and intentional misrepresentation claims do not meet the heightened pleading

requirements of FED. R. CIV. P. 9(b).  In particular, Vickery's allegations, when taken as a whole,

do not include the "time, place, and contents of the false representations . . . [or] the identity of the

person making the misrepresentation and what [that person] obtained thereby."  *Tuchman v. DCS*

*Communications Corp.*, 14 F.3d 1061, 1068 (5th Cir.) (quoting *Tel-Phonic Services, Inc. v. TBS Int'l,*

*Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992)), *reh'g and reh'g en banc denied*, 20 F.3d 1172 (5th Cir.

1994).  Vickery does allege that her real estate agent, Ms. Jennings, was told that "no foreclosure sale

date was scheduled," but Vickery does not allege who gave Ms. Jennings that information.  *See Sullivan,* 600 F.3d at 551 (where plaintiff failed to allege "who at the company made the statements or when or where they occurred," he did not meet Rule 9(b)'s heightened pleading requirement). In addition, while allegations of scienter may be alleged generally, there are no allegations of scienter in Vickery's First Amended Complaint.  Finally, there are no allegations by Vickery of any damage she suffered as a result of what Ms. Jennings was told.  Because Vickery's allegations do not meet the heightened pleadings requirements for fraud, her fraud and intentional misrepresentation claims are subject to dismissal pursuant to FED. R. CIV. P. 9(b), 12(b)(6).

Moreover, even if dismissal was not warranted, summary judgment is.  In Texas, the elements of a claim of fraud by misrepresentation are: "(1) a misrepresentation that (2) the speaker knew to be false or made recklessly (3) with the intention to induce the plaintiff's reliance, followed by (4) actual and justifiable reliance (5) causing injury."  *Rio Grande Royalty Co., Inc. v. Energy Transfer Partners, L.P.*, 620 F.3d 465, 468 (5th Cir. 2010).  Here, even though Vickery has submitted evidence that Ms. Jennings was told, on January 8, 2010, that a foreclosure sale had not been set, *see* Declaration of Genie Jennings (Document No. 28-4), Vickery has not submitted any summary judgment evidence on any of the other elements of her fraud and intentional misrepresentation claims.  In particular, there is no evidence that she relied, in any way, on the alleged misrepresentation made on January 8, 2010, that a foreclosure sale had not been set.  And, even if Vickery did so rely, and even if Vickery had submitted some summary judgment evidence of her reliance, her fraud claims would still fail because any reliance on her part would not have been justifiable.  As set forth above, Vickery was provided legally effective notice, whether she actually received it or not, that a Substitute Trustee Sale had been scheduled for February 2, 2010.  Finally,

14

Vickery has submitted no summary judgment evidence that she was injured as a result of any reliance on Wells Fargo's alleged statements to Ms. Jennings on January 8, 2010, that a foreclosure sale had not been set.  In particular, Vickery has come forth with no summary judgment evidence that she could have sold the house through the short sale process if the foreclosure had not occurred, and no summary judgment evidence that the foreclosure resulted in any monetary loss.

In all, because Vickery has not alleged her fraud and intentional misrepresentation claims with the particularity required by Rule 9(b), and because Vickery has not come forth with summary judgment evidence that raises a genuine issue of material fact on the elements of those claims for trial, dismissal and/or summary judgment is warranted on the fraud and intentional misrepresentation claims.

### D.    § 12.002 Texas Civil Practice and Remedies Code

Vickery alleges that Wells Fargo violated section 12.002 of the Texas Civil Practice and Remedies Code when "individuals without authority to transfer the Note" signed the assignments "purporting to transfer Plaintiff's loan."  Plaintiff's First Amended Complaint (Document No. 17) at 10.  Such assignments of the Note, Vickery contends, are void.  *Id.*

Vickery, who admitted in discovery responses that she was not party to the assignment of the Note, see Exhibit "M" to Defendants' Motion (Document No. 22-14), has no standing to challenge the validity of the assignment.  *Eskridge v. Fed. Home Loan Mortgage Corp.*, 2011 WL 2163989 *5 (W.D. Tex. 2011); *Woods v. Bank of America*, 2012 WL 1344343 *5 (N.D. Tex. 2012).  As such, she cannot, as a matter of law, maintain a claim for violations of § 12.002 of the Texas Civil Practice and Remedies Code.  *E.g. Brown v. Countrywide Home Loans, Inc.*, 2012 WL 4478300 * 3 (E.D.

Tex. 2012); *Marsh v. JPMorgan Chase Bank, N.A.*, ___ F.Supp.2d ___, 2012 WL 3756276 *6-*7(W.D. Tex. 2012).

### E.     Texas Debt Collection Practices Act

In her claim for violation of the Texas Debt Collection Practices Act, Vickery alleges that Wells Fargo made misrepresentations regarding its "authority to collect payments, assess fees . . . [and] foreclose."  Plaintiff's First Amended Complaint (Document No. 17) at 11-12.

To be actionable under the Texas Debt Collection Act, as a misrepresentation of "the character, extent or amount of a consumer debt statement," TEX. FIN. CODE § 392.304(a)(8), the statement complained of has to be false or misleading.  *Bellaish v. Chase Home Finance*, LLC, Civil Action No. H-10-2791, 2011 WL 4902958 *2 (S.D. Tex. 2011) (Atlas, J.).  Because Vickery has not alleged in her pleadings what statements Wells Fargo made about the character, extent or amount of her debt were false, Vickery has not stated a plausible claim, within the meaning of *Twombly*/*Iqbal*, against Wells Fargo for violations of the Texas Debt Collection Practices Act.

### F.     Unreasonable Debt Collection

Vickery's unreasonable debt collection claim is based on allegations that Wells Fargo made "continual miscommunications regarding Plaintiff's eligibility for a loan modification, while simultaneously intending to foreclose on Plaintiff's home. . . . Such conduct amounts to a pattern or practice or course of harassment by Wells Fargo, which constituted conduct that was willful, wanton, and malicious. . . " Plaintiff's First Amended Complaint (Document No. 17) at 12.

A cause of action in Texas for unreasonable collection efforts is based on collection efforts that "amount to a course of harassment that was 'willful, wanton, malicious, and intended to inflict mental anguish and bodily harm.'"  *EMC Mortgage Corp. v. Jones*, 252 S.W.3d 857, 868-69 (Tex.

App.–Dallas 2008) (citing *Montgomery Ward & Co. v. Brewer*, 416 S.W.2d 837, 844 (Tex. Civ.

App.–Waco 1967, writ ref'd n.r.e.)).  Here, aside from the foreclosure, there are no allegations or

complaints in Vickery's pleading about any debt collection efforts.  In addition, there is nothing in

Vickery's pleadings describing any action on Defendant's part that could be considered

"harassment."  While Vickery complains that she was led to believe that she could qualify for a loan

modification, there are no allegations that Wells Fargo, as part of its efforts to collect a debt,

harassed her into seeking a loan modification that it knew she could not obtain.  Moreover, the fact

that Vickery did not ultimately qualify for a modification does not constitute harassment.  Vickery

has failed to state a plausible claim for unreasonable debt collection, and therefore the claim is

subject to dismissal.

### G.    Negligent Misrepresentation

In her final substantive claim, for negligent misrepresentation, Vickery alleges:

> . . . Wells Fargo supplied false information in the course of its business, profession
> or employment, or in the course of a transaction in which Defendant has a pecuniary
> interest, and that such information was supplied by Defendant for the guidance of
> Plaintiff in the transactions described hereinabove.   Specifically, Defendant
> repeatedly misrepresented its efforts to assist Plaintiff in obtaining a modification of
> her loan, only to proceed with the foreclosure on Plaintiff's home. . . Defendant
> failed to exercise reasonable care or competence in obtaining or communicating such
> information and, in fact communicated the opposite to Plaintiff.

Plaintiff's First Amended Complaint (Document No. 17) at 13.

In Texas, a claim of negligent misrepresentation requires proof that: "(1) the representation

is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary

interest; (2) the defendant supplies 'false information' for the guidance of others in their business;

(3) the defendant did not exercise reasonable care or competence in obtaining or communicating the

information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the representation." *Fed. Land Bank Ass'n v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991).  Here, Vickery's allegations do not state a claim for negligent misrepresentation within the meaning of *Twombly/Iqbal*.  Vickery alleges that Wells Fargo "repeatedly misrepresented its efforts to assist Plaintiff in obtaining a modification," but does not allege what the misrepresentations were.  Instead, Vickery's allegations are made up of only legal conclusions.   Moreover, to the extent Vickery's negligent misrepresentation claim can be construed as being based on the incorrect information provided to Ms. Jennings on January 8, 2010, about whether a foreclosure date had been set, Vickery has not provided, anywhere in the complaint, any *factual* allegations that would fit the elements of a negligent misrepresentation claim.   Vickery has, accordingly, not stated a plausible claim for negligent misrepresentation within the meaning of *Twombly/Iqbal*.

### H.   Declaratory Judgment

In her claim for declaratory judgment, Vickery seeks a declaration that "Wells Fargo was not the holder and owner of the Note and Deed of Trust," that [Wells Fargo] is unable to establish the prerequisites to a valid foreclosure," and that the foreclosure proceeding is "null and void." Plaintiff's First Amended Complaint (Document No. 17) at 6-7.

A declaratory judgment claim cannot stand alone; instead, the "Texas Uniform Declaratory Judgments Act, TEX.CIV.PRAC. & REM.CODE ANN. § 37.001 *et seq.* (Vernon 1986), is merely a procedural device; it does not create any substantive rights or causes of action."   *Sid Richardson Carbon & Gasoline Co. v. Interenergy Res., Ltd.* 99 F.3d 746, 752 n. 3 (5th Cir. 1996).  Where all the substantive, underlying claims have been dismissed, a claim for declaratory judgment cannot survive. *Ayers v. Aurora Loan Services, L.L.C.*, 787 F.Supp.2d 451, 457 (E.D. Tex. 2011)

(dismissing claim for declaratory judgment where all underlying substantive claims had been dismissed); *Valdez v. Federal Home Loan Mortgage Corp.*, 2011 WL 7068386 *3 (N.D. Tex. 2011) (where Plaintiff failed to state a claim for trespass to try title and to quiet title, Plaintiff's claims for declaratory and injunctive relief were also subject to dismissal under Rule 12(b)(6)); *James v. Wells Fargo Bank, N.A.*, 2012 WL 778510 *4 (N.D. Tex. 2012) (dismissing claim for declaratory relief where the "arguments for declaratory relief are unsupported by the facts alleged").

Here, the uncontroverted summary judgment evidence submitted by Wells Fargo is that HSBC is the owner and holder of the Note and Deed of Trust, and Wells Fargo is the loan servicer. As the loan servicer, Wells Fargo had the authority to seek enforcement of the Note, including by way of a foreclosure proceeding. *See Bellot v. Ocwen Loan Servicing, LLC*, 2012 WL 5967442 (S.D. Tex. 2012) (Werlein, J.) ("The Texas Property Code expressly allows a loan servicer to conduct a non-judicial foreclosure on behalf of a mortgagee if the mortgagee agrees and appropriate notice is given."). To the extent Vickery seeks to challenge the assignment of the Note to HSBC, she does not have standing to do so.

Because Vickery's substantive claims are all subject to dismissal, her declaratory judgment claim must be dismissed as well.

## IV.    Conclusion and Order

Based on the foregoing, and the conclusion that Plaintiff Resonda Kay Vickery has, with respect to all the claims she alleges in her First Amended Complaint, either failed to state a claim or failed to come forth with summary judgment evidence that raises a genuine issue of material fact for trial, it is

ORDERED that Defendant's Motion for Summary Judgment and Motion to Dismiss (Document No. 22) is GRANTED and Plaintiffs' claims are DISMISSED with prejudice.

Signed at Houston, Texas, this 28th day of January, 2013.

Frances H. Stacy
United States Magistrate Judge